**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**V.**                                    **CAUSE NO. 3:17-cr-77-CWR-LRA**

**NIKOLAOS T. KOUTSOS, et al.**                                    **DEFENDANTS**

## ORDER

Before the Court is James Horrisberger's motion for reconsideration of the Court's order denying his motion to suppress. Docket No. 63. His codefendant Lai Saechao joins the motion. Docket No. 64. For the reasons stated below, the motion to suppress is once again denied.

**I.        Factual Background and Procedural History**

On June 6, 2017, the U.S. Air Marine Operations Center (AMOC) contacted the U.S. Customs and Border Protection Air and Marine Operations, New Orleans Air and Marine Branch (NOAMB) concerning a Piper airplane. The NOAMB agents were told that the Piper departed California and began a flight to Florida.[1] The aircraft refueled in New Mexico, and continued traveling eastward. And "[b]ased on the type of aircraft, current speed and previous travel, agents from NOAMB determined that the aircraft was likely to land somewhere near Hattiesburg, Mississippi to refuel." Docket No. 44-1 at 2.

Shortly before 6 p.m. central time, James Horrisberger landed the Piper at Copiah County Airport in Mississippi. Horrisberger was traveling with two passengers: Lai Saechao and Nikolaos Koutsos.

Fifteen minutes later, after refueling and as the Piper was taxiing towards the runway for departure, Agent Martin Smith of NOAMB hailed the Piper via radio to conduct a pilot

---

[1] The government does not dispute that the plane's origination was California and destination was Florida.

certificate inspection (PCI). Agent Smith, who was flying in a helicopter with Agent Grant

Sibley, informed Horrisberger that they were agents with the U.S. Department of Homeland

Security.[2] He asked Horrisberger to shut down the airplane's engines and present his documents

for inspection. Horrisberger complied with the request, and Agent Smith landed in front of the

Piper—blocking the only active runway at the airport.

The agents conducted the PCI and found that each of Horrisberger's documents were in

order. But the encounter did not end at that point. Based on a number of factors, the PCI

morphed into an investigatory stop. *See United States v. Koutsos*, 3:17-CR-77-CWR-LRA, 2017

WL 5615893, at *1 (S.D. Miss. Nov. 21, 2017). During the stop, the agents smelled marijuana

emanating from the Piper and arrested Horrisberger. Agent Smith then ordered Saechao and

Koutsos off the plane and arrested them as well.

Forty to forty-five minutes later, additional Homeland Security agents arrived at the

scene and conducted a K-9 search of the Piper. The search yielded bundles of marijuana

packaged in vacuum-sealed, plastic garbage bags. Horrisberger, Saechao, and Koutsos were all

charged with crimes related to marijuana distribution.

Horrisberger and Saechao moved this Court to suppress evidence resulting from their

detention and arrest. Following an evidentiary hearing on October 24, 2017, the Court denied the

motion in its November 21, 2017 Order. *See id.* at *7.

Aggrieved by the denial, Horrisberger and Saechao now move for reconsideration of a

narrow issue. Defendants argue that Agents Smith and Sibley, as CBP agents, did not have

statutory authority to inspect Horrisberger's documents because Horrisberger was piloting a

---

[2] The Court will interchangeably use NOAMB, AMOC, and CBP as descriptors of Agents Smith and Sibley.
NOAMB is an operating location of AMOC, which is a subagency of U.S. Customs & Border Protection (CBP).
CBP is a law enforcement agency of the U.S. Department of Homeland Security.

purely domestic flight. On December 15, 2017, the Court held a hearing on the present motion, and is now ready to rule.

## II.    Legal Standard

Motions for reconsideration serve a "narrow purpose." *Nationalist Movement v. Town of Jena*, 321 Fed. App'x 359, 365 (5th Cir. 2009). "Such requests are often made, but granting the relief is rare, as it is an extraordinary remedy and should be used sparingly." *United States v. Lopez*, 817 F. Supp. 2d 918, 932 (S.D. Miss. 2011) (quotations marks and citation omitted). When considering such a motion, "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bolin Co., Inc. v. Banning Co.*, Inc., 6 F.3d 350, 355 (5th Cir. 1993). Federal courts recognize only three possible grounds for any motion for reconsideration: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice. *United States v. Palmer*, 122 F.3d 215, 232-33 (5th Cir. 1997).

Motions for reconsideration are not to be used to relitigate old matters or to present evidence that could have been raised prior to entry of judgment. *Lopez*, 817 F. Supp. at 932. "Whatever may be the purpose of [a motion for reconsideration] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

The defendants here do not rely on an intervening change in the law nor have they pointed to any newly discovered evidence. Therefore, their motion is anchored to their belief that this Court manifestly erred when it did not address their argument on this point. Manifest error is defined as "'[e]vident to the senses, especially to the sight, obvious to the understanding, evident

to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evidence and self-evidence.'" *In Re Energy Partners, Ltd.*, No. 09-32957-H4-11, 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009) (citations omitted). In meeting its obligation to render a just decision on all the facts, the Court will address the Defendants' arguments for purposes of providing sufficient clarity of its prior ruling.

## III.   Discussion

In its November 21 Order, this Court held that AMOC had statutory authority to inspect Horrisberger's documents. *See Koutsos*, 2017 WL 5615893, at *4 ("Fifth Circuit case law is clear that a '[a] ramp check [or PCI], authorized by state and federal law, permits officers of the [FAA] or police to examine the pilot's and aircraft's licensing and certification to ensure that they conform to FAA regulations.'"). Defendants assert that the Court improperly relied on *United States v. Zukas*, 843 F.2d 179, 181 (5th Cir. 1988) for this proposition, because the "officers conducting the investigation in *Zukas* were agents with the Drug Enforcement Administration (DEA), a law enforcement entity with much broader jurisdiction authority than the CBP agents that conducted the PCI" in this case. Docket No. 63 at 2-3. Specifically, the defense contends that customs officers, which include AMOC agents, do not have authority to perform a PCI of a domestic flight.[3]

In response, the government argues that several statutes and regulations grant CBP the authority to conduct a PCI. The Court will address each authority in turn.

### A.   Immigration and Nationality Act

The government contends that 8 U.S.C. § 1357(a)(5)(A) provides CBP agents the authority to make warrantless arrests for any federal offenses. But the government selectively

---

[3] In *United States v. Massi*, a case upon which this Court relied in its original Order, the Fifth Circuit did not address this issue, as Massi did not challenge AMOC's regulatory inspection as improper. 761 F.3d 512, 521 (5th Cir. 2014).

quotes from the provision and leaves out a qualifying clause. Section 1357(a)(5)(A), read in its entirety, permits CBP agents to make arrests:

> for any offense against the United States, if the offense is committed in the officer's or employee's presence . . . if the officer or employee is performing duties *relating to the enforcement of the immigration laws* at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(5)(A) (emphasis added).

Here, it is undisputed that Agents Smith and Sibley were not performing duties relating to the enforcement of immigration laws. This section provides no support for the government.

Further, the government's argument is misplaced, as the statute relates only to arrest authority. The statute does not address whether CBP agents are authorized to conduct a regulatory stop. Accordingly, the Court rejects the government's contention that § 1357(a)(5)(A) granted Agents Smith and Sibley the authority to inspect Horrisberger's documents.

### B.     Tariff Act of 1930

The government next asserts that 19 U.S.C. § 1581(a) allows customs officers to board "any vessel or vehicle" and search them, "at anytime" and "at any place in the United States," without a warrant. Though the statute was enacted prior to the widespread use of planes, the government argues that "any vessel or vehicle" includes planes.

The government is wrong. As the defense points out, another statute explicitly says that vessel or vehicle excludes plane.[4]

---

[4] Section 1401(a) excludes "aircraft" from the definition of "vessel," and § 1401(b) excludes "aircraft" from the definition of "vehicle." 19 U.S.C. § 1401 (a)-(b).

The associated regulations bear this out. CBP's authority to board and search planes is found in 19 C.F.R. § 162.5 and is limited to flights arriving in the United States from a foreign country—not at any time or place as in the case of vehicles and vessels.[5] Likewise, 19 C.F.R. § 162.6 requires any plane arriving from "places outside" the U.S. to present its documents to CBP officers.[6]

In this case, the government does not dispute that the flight was domestic. There was no evidence of recent international travel. *Cf. Massi*, 761 F.3d at 522 (noting that defendant had recently traveled to Tijuana, Mexico, "a known hub of the illegal drug trade."). Therefore, the authority granted to CBP under the Tariff Act of 1930 is inapplicable here.

### C.     Carrying Out Other Duties

The government then argues that, pursuant to the Homeland Security Act, AMOC must "carry out other duties and powers prescribed by the [AMOC] Executive Assistant Commissioner." *See* 6 U.S.C. § 211(4)(C)(v). In 2014, Randolph D. Alles, the AMOC Executive Assistant Commissioner, published a report, "Domestic General Aviation Law Enforcement Operations, A Top-Down Review." *See* Docket No. 66-1. The report examines the Office of Air and Marine's PCI process. The government construes this report as a directive for "Air and Marine Agents to conduct domestic general aviation law enforcement activities and investigations." Docket No. 66 at 5.

Alles, however, must have the legal authority to issue such a directive to his agents. The report lists three authorities that, according to Alles, authorize AMOC agents to conduct the

---

[5] "A customs officer may stop any vehicle and board any aircraft *arriving in the United States from a foreign country* for the purpose of examining the manifest and other documents and papers and examining, inspecting, and searching the vehicle or aircraft." 19 C.F.R. § 162.5 (emphasis added).
[6] "All persons, baggage, and merchandise arriving in the Customs territory of the United States from *places outside thereof* are liable to inspection and search by a Customs officer." 19 C.F.R. § 162.6 (emphasis added).

inspections: 49 U.S.C. § 44103(d) ("Registration of aircraft"); 14 C.F.R. § 91.203 ("Civil aircraft: Certifications required"); and 14 C.F.R. § 61.3(l) ("Requirement for certifications, ratings, and authorizations"). Each will be considered in turn.

Section 91.203 is irrelevant to this analysis. It requires that pilots obtain and carry airworthiness and registration certificates. It does not address CBP officers' jurisdiction.

49 U.S.C. § 44103(d) provides that a pilot must submit to an inspection "when requested by a United States Government, State or local law enforcement officer." 14 C.F.R. § 61.3(l) similarly states that "[e]ach person who holds an airman certificate, medical certificate, authorization, or license required by this part must present it and their photo identification . . . upon a request from . . . *[a]ny Federal, State or local law enforcement officer*."[7] 14 C.F.R. § 61.3(l)(3) (emphasis added). The government broadly construes this language to suggest that *any* law enforcement officer from *any* jurisdiction has the authority to conduct a PCI.

The government has a point. "Any Federal, State or local law enforcement officer," when read literally, grants *all* federal law enforcement officers the authority to perform a PCI.

The government, however, fails to acknowledge the unspoken jurisdictional scope of the regulation. The defense asserts and the Court agrees that "[a]ny Federal, State or local law enforcement officer" should be read as granting all law enforcement officers *with jurisdiction* the authority to conduct an inspection.

As an example, federal law permits the United States Department of Veterans Affairs Police to enforce federal, state, and local laws only "with respect to acts occurring on

---

[7] 14 C.F.R. § 61.51(i) also provides that "[p]ersons must present their pilot certificate, medical certificate, logbook, or any other record required by this part for inspection upon a reasonable request by . . . *[a]ny Federal, State or local law enforcement officer*." 14 C.F.R. § 61.51(i)(1)(iii) (emphasis added). In their reply, Defendants assert that both § 61.51 and § 61.3 do "not pertain to restrictions on Customs and Border Patrol operations" because the regulations provide guidelines to the Federal Aviation Administration and the Department of Transportation. Docket No. 70 at 3. The Court disagrees.

*Department property.*" 38 U.S.C. § 902 (emphasis added).  Other examples include the United States Postal Inspection Service (USPIS), whose investigative powers are limited to Postal Service property, *see* 18 U.S.C. § 3016, and park rangers who are empowered to maintain law and order and protect persons and property within the areas of the National Park System*, see* 54 U.S.C. § 102701(a)(1) and (2)(B). Because of these statutory restrictions, a VA or USPIS officer or Park Ranger would have no authority to perform a PCI at Copiah County Airport—despite the plain language of § 61.3(l).

Similarly, local police departments are also restricted to the territory they serve. A Yazoo County deputy, for example, does not have the authority to perform a PCI at the Copiah County Airport because the airport falls outside of his territorial jurisdiction.

Defendants argue that CBP officers also have geographic restrictions. First, the defense relies on an out-of-circuit decision, *United States v. Garcia*. 672 F.2d 1349 (11th Cir. 1982). In *Garcia*, the 11th Circuit established a three-part test to determine whether BP agents may search a plane without a warrant or probable cause at the international or extended border. *Id.* at 1367. This case misses the mark, however. As the government points out, the holding in *Garcia* is "limited to whether a warrantless border search was permissible, not jurisdiction." Docket No. 66 at 6.

Second, the defense asserts that the PCI was outside of CBP's jurisdiction because it "occurred outside of the 100 mile border extension area." Again, this argument is misplaced. CBP has authority to stop and conduct searches of vehicles anywhere "within a reasonable distance from any external boundary of the United States." 8 U.S.C. § 1357(a)(3). The Attorney General's regulation defines "reasonable distance" as "within 100 air miles from any external

boundary of the United States."[8] 8 C.F.R. § 287.1. The "100 air miles" rule, however, defines where a warrantless border search is permissible. The rule does not address the territorial jurisdiction of CBP to conduct a regulatory inspection.

While the Court agrees with the defense's reading of § 61.3(l)(3), neither the defense's arguments nor the Court's research has revealed any geographic restrictions on CBP's powers to conduct a PCI. As such, Agents Smith and Sibley had the authority to conduct the inspection of Horrisberger's documents.

The Court has reservations about the expansive reach this conclusion allows. While it has not found an express limitation of CBP's jurisdiction, it should not be taken for granted that U.S. Customs and Border Protection, as the agency's name suggests, was established to enforce laws along the border or its functional equivalent. Similarly, AMOC's mission is "to detect, interdict and prevent acts of terrorism and the unlawful movement of people, illegal drugs, and other contraband *toward or across the borders* of the United States."[9] And, of course, principles of federalism suggest that federal law enforcement is limited to enumerated powers and issues, and lacks the general police powers reserved for the state. To the extent the Court has erred, therefore, the defendants have preserved their arguments for further review.

## IV. Conclusion

The motion for reconsideration is denied.

**SO ORDERED**, this the 23rd day of January, 2018.

s/ Carlton W. Reeves        <br>
UNITED STATES DISTRICT JUDGE

---

[8] In its reply, the defense cites 8 C.F.R. § 271, "Diligent and Reasonable Efforts to Prevent the Unauthorized Entry of Aliens by the Owners of Railroad Lines, International Bridges or Toll Roads." As this regulation is inapplicable to this case, the Court believes the defense instead meant to cite 8 C.F.R. § 287.1.

[9] *See Meeting Our Mission*, U.S. Customs & Border Protection, https://www.cbp.gov/careers/meeting-our-mission (last visited January 18, 2017).