IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                                                      CRIMINAL NO.: 3:17-CR-077-CWR-LRA

LAI FOU SAECHAO-003                                                            DEFENDANT

**DEFENDANT SAECHAO'S REPLY TO
GOVERNMENT'S RESPONSE TO MOTION TO SUPPRES SEARCH WARRANT**

The Defendant, Lai Saechao, by and through his undersigned counsel, files this reply to the Government's Response to Defendant Saechao's Motion to Suppress Search Warrant [Doc. #83].

**A. Saechao has standing to contest the search of the Samsung Galaxy Note.**

The Government's argument about standing appears at first blush to be an attempt to chill Mr. Saechao's desire to enforce his 4th Amendment rights. The government's response is confusing in that the Government has repeatedly represented to counsel for Saechao that it attributes ownership of the Samsung Galaxy Note to Saechao. Moreover, the entire basis for this motion was the government's belated declaration of its intent to argue that very fact to the jury. Assuming the government's argument here is genuine, the government is apparently telling the court that it is convinced that the device does belong to Saechao, such that it believes it is proper to advocate that position to a jury. Out of the other side of its collective mouth, however, the government seems to question this very notion, as if it has a good faith basis to challenge Saechao's standing to contest the search of the device, i.e. that the government does not believe the device or its contents belong to Saechao. The incongruity is baffling.

If, however, the Government is willing to concede that it cannot establish that Saechao was associated with the content of the device, and that there is not a sufficient basis for the use of any data contained on the device in the trial, Saechao will withdraw the motion to suppress as it relates to the Samsung Galaxy Note as moot. In any event, since Mr. Saechao enjoys his 4th and 5th Amendment rights concurrently, he is not required to make any particular claim of ownership to an item in the manner the government appears to allege.

**B. The search was untimely as the warrant unequivocally commanded that it be executed by July 12, 2017.**

The Government's response doesn't exactly do justice to the language of Rule 41(e)(2)(A)(i). It actually says that a search warrants issued by a federal court must be executed *"within a specified time no longer than 14 days."* Fed. R. Crim. P. 41(e)(2)(A)(i). In this case the specified time by which the warrant had to be executed was July 12, 2017 as expressly "commanded" on the face of the warrant. Fed. R. Crim. P. 41(e)(2)(A)(i). Further, Saechao does not dispute that the warrant authorizes a later *review* or even off-site *copying* of the media or information consistent with a validly executed warrant. Fed. R. Crim. P. 41(e)(2)(B). However, the Government conflates "off-site copying or review" with the initial search and extraction of data. The initial extraction – or actual search – of data did not occur by July 12, 2017, as commanded by the warrant. Consistent with the plain language of Rule 41, had the Government conducted its initial search and *extracted* the data by July 12, 2017, it would have been free to review and copy the data at its will. But as briefed in the Motion to Suppress, Saechao's complaint is with the initial search - the *extraction* - of data from the device, which, according to the Government's report, occurred on July 14, 2017, after the warrant had expired.

The Government's only cited case supporting its argument that execution of a warrant should not be determined by strict adherence to number of days since issuance is from 1975 and

2

analyzes a warrant with "forthwith" language. *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975). The word "forthwith" has been eliminated from Federal Rule of Criminal Procedure 41, and warrants are no longer issued with the "forthwith" language. As such, these cases are inapposite. The warrant here specifically prescribed the date by which the warrant must be executed. The Government searched the cellular phone too late, and the evidence obtained from the search should be suppressed.

### C. The *method* of search converted the subject warrant into a general warrant.

The Government's argument that the subject warrant was specific enough misses the point: it was the *method* of search that converted this otherwise particularized warrant into a general warrant. Saechao agrees that, essentially, the warrant sought only evidence relevant to the investigation into the production, transportation, and distribution of marijuana. However, the government failed to follow a protocol or method as it went about the search of these personal cellular devices – that undoubtedly contain an individual's most personal information – that would at least attempt to limit its exposure to personal and private information not covered by the warrant. *See e.g., In re Cellular Tels.*, 2014 WL 7793690, *9 (D. Kan. Dec. 30, 2014). The Government's execution of the warrant without a protocol undermined the particular search authorized by the warrant. What occurred was a complete dump of data from the devices with no limit whatsoever. The government offers no explanation in its response of how its search and subsequent review was designed to limit the risk of exposure to Saechao's personal content that was not covered by the warrant. As fully briefed in Saechao's Motion to Suppress, this unlimited search method transformed what could have otherwise been a particularized search into a general one. *See United States v. Kimbrough*, 69 F.3d 723, 728 (5th Cir. 1996).

**D. The Government presents no case law wherein the *only* evidence supporting the warrant for a cellular phone search was mere presence in a conveyance containing contraband, and failed to establish probable cause.**

The cases cited by the Government to support the proposition that probable cause exists to search a cellular phone because they are often used to facilitate crime are easily distinguishable from this case. Unlike in this case, in the cases cited in the Government's Response, the affidavits in support of the warrants contain evidence of the defendants' involvement prior to encountering them at a stop and/or evidence the defendant was either the owner of or in control of the vehicle in which he was arrested and contraband was found.[1] Here, of course, the affidavit contains no evidence of Saechao's alleged involvement in drug trafficking prior to the stop at issue, and Saechao was merely present on the airplane. He was not in control of the airplane as the pilot, and he was not the owner of the airplane.

In the first case the Government describes in its reply, *United States v. Barrett*, 824 F. Supp. 2d 419, 448 (E.D.N.Y. 2011), the court explained that the affidavit accompanying the warrant to search Barrett's cellular phone "described in detail the year-long investigation conducted by the DEA . . . into a drug distribution organization allegedly led by Barrett." In the second case, *United States v. Wiseman*, 158 F. Supp. 2d 1242, 1249 (D. Kan. 2001), the defendant was driving his own vehicle when he was arrested, and the officers found methamphetamine on his person and in *his* vehicle. Further, the court explained that probable cause existed to search the cellular phone because of the circumstances surrounding the arrest, including that the defendant recently had been arrested for the manufacture of methamphetamine. In the third case, *United States v. Eiland*, No. CRIM.04-379(RCL), 2006 WL 516743, at *12 (D.D.C. Mar. 2, 2006), the court considered that the affidavit accompanying

---

[1] The government's response included a string cite of cases dealing with obtaining a wire tap. Those cases are also inapposite.

4

the warrant to search the phones recited "<u>in detail evidence obtained from wiretaps and results of other searches</u>." While the affidavits in those cases also contained language similar to that contained in the affidavit here, i.e., that cellular phones are often to facilitate trafficking, the circumstances surrounding the arrests in those cases provided far more evidence to establish probable cause than the defendant merely being present where contraband was allegedly present. The Government's affidavit, which simply identified Saechao as being present on the plane and indicating that cellular phones are used to facilitate trafficking, was insufficient to establish probable cause, even under the Government's cited cases.

## CONCLUSION

The foregoing considered, Defendant Saechao requests that this court suppress all of the evidence obtained from his cell phones and other electronic devices attributed to him.

Respectfully submitted, this the 23rd day of March, 2018.


                                        LAI FOU SAECHAO


                                        *s/J. Scott Gilbert*
                                        J. Scott Gilbert, Attorney for
                                        Lai Fou Saechao-003


J. SCOTT GILBERT
Mississippi State Bar No.: 102123
WATKINS & EAGER PLLC
The Emporium Building
400 E. Capitol Street
Jackson, MS 39201
Telephone: 601-965-1900
Facsimile:  601-965-1901

## CERTIFICATE OF SERVICE

I, j. Scott Gilbert, hereby certify that on the 23rd day of March, 2018, I electronically filed the foregoing with the Clerk of this Court using the ECF system, which automatically sent electronic notification of such filing to all counsel.

This, the 23rd day of March, 2018.

                                             *s/J. Scott Gilbert*
                                             J. Scott Gilbert